IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| UNITED STATES SECURITIES AND | § | |
|---|---|---|
| EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:12-CV-517 |
| | § | |
| YOSSEF KAHLON, TJ MANAGEMENT | § | |
| GROUP, LLC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF
SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR REMEDIES**

The following are pending before the court:

1. Plaintiff Securities and Exchange Commission's motion for remedies and supporting brief (docket entry #63);

2. Defendants' brief in opposition to Plaintiff SEC's motion for remedies (docket entry #68); and

3. Plaintiff Security and Exchange Commission's amended reply brief in support of its motion for remedies (docket entry #70).

Having considered the Plaintiff's motion and the responsive briefing thereto, the court finds that the motion should be granted.

## BACKGROUND

On September 30, 2015, the court issued its "Memorandum Opinion and Order Denying Cross Motions for Summary Judgment" (docket entry #59); *SEC v. Kahlon*, 141 F. Supp. 3d 675 (E.D. Tex. 2015). In its memorandum opinion and order, the court concluded that summary judgment should be granted in favor of the Securities and Exchange Commission (SEC) on liability

because no genuine dispute as to any material fact existed regarding the SEC's entitlement to judgment as a matter of law on the following issues: (1) the Defendants' transactions violated the Securities Act of 1933; and (2) the Defendants' transactions were not exempt from registration under Rule 504 of Regulation D. *Id*. The court, however, reserved ruling on the SEC's request for remedies, finding that "there are genuine factual issues with regard to the factors the court must consider in assessing Plaintiff's requests for equitable and injunctive relief." *Id*. at 681. The court concluded that the "appropriateness of such remedies shall be determined after a trial or evidentiary hearing." *Id*.

Thereafter, on October 20, 2015, the court entered a scheduling order which governed the briefing schedule related to the SEC's claims for monetary and injunctive relief (docket entry #61). Additionally, the court scheduled this matter for a hearing on May 10, 2016 for "the Parties to present further argument and/or evidence as the court deems appropriate." *Id*.

On May 4, 2016, the court cancelled the May 10, 2016 hearing (docket entry #71). In its "Order Cancelling Hearing Scheduled for May 10, 2016," the court determined that after reviewing the parties' respective briefs regarding remedies as well as the evidence submitted, an evidentiary hearing was not necessary. The court further noted that on May 4, 2016, counsel for the Plaintiff, Mr. Jonathan Polish, and counsel for the Defendants, Mr. David Kornblau, left a voicemail with the court's judicial assistant. In the voicemail, counsel for the parties advised the court that they did not intend to present any witnesses or further evidence at the May 10, 2016 hearing. The parties stated that they only intended to present their arguments to the court at the May 10, 2016 hearing. In light of the parties' telephone message and because the written submissions from the parties contained

their arguments, the court concluded that oral argument was not necessary.[1]

## DISCUSSION AND ANALYSIS

Having already determined the issue of liability as a matter of law, the court now turns to the issue of remedies. The SEC seeks the following remedies:

1. A permanent injunction against both Defendants;

2. Disgorgement, jointly and severally, in the amount of $7,758,178;

3. Prejudgment interest in the amount of $1,522,895;

4. A civil penalty against Defendant Kahlon in the amount of $200,000; and

5. A permanent penny stock bar against both Defendants.

The court will address each requested remedy in turn.

### A. Permanent Injunction

> Section 20(b) of the Securities Act "authorize[s] the [SEC] to seek and direct[s] the courts to enter permanent restraining orders upon a 'proper showing' that the defendant 'is engaged or is about to engage' in violations of the securities laws." *SEC v. Zale Corp.*, 650 F.2d 718, 720 (5th Cir. Unit A July 1981). "The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (citations omitted). Courts analyze a number of factors to determine whether past violations of the securities laws constitutes a reasonable likelihood of future transgressions, such as the
>
>> egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future

---

[1] The court received correspondence from counsel for the Defendants, Mr. David Kornblau, dated May 9, 2016. In his letter, Mr. Kornblau expressed disappointment that the court cancelled the May 10, 2016 hearing. Although Mr. Kornblau welcomed the opportunity to argue his clients' positions to the court at a rescheduled hearing, the court finds that the parties adequately briefed the issues to be determined.

> violations.
>
> *Id*. "While scienter is an important factor in this analysis, it is not a prerequisite to injunctive relief." *Id*. (citations omitted).

*SEC v. Offill*, No. 3:07-CV-1643-D, 2012 WL 1138622, at *4 (N.D. Tex. Apr. 5, 2012).

The SEC seeks a permanent injunction against the Defendants to ensure that the Defendants do not violate Section 5 of the Securities Act in the future. *See Offill, supra.* Since the court previously determined that the Defendants violated the securities laws, *Kahlon, supra.*, "the court need only decide whether there is a reasonable likelihood of future violations." *Offill*, 2012 WL 1138622, at *4.

The SEC argues that the egregiousness of the Defendants' conduct, coupled with their scienter, compels the issuance of a permanent injunction. The SEC contends that the Defendants ignored the fact that their prior counsel was permanently barred from issuing opinion letters. The SEC further contends that the Defendants ignored the SEC's complaint pertaining to the illegal public distributions of My Vintage Baby stock. The SEC also argues that the Defendants were not truthful with their attorney, David Kahn, about (1) their intent to publicly distribute shares as soon possible, or (2) the suggestion that the Defendants' operations and investment decisions were based in Texas. Additionally, the SEC notes that the Defendants have failed to acknowledge their wrongdoings; rather, they have maintained that their offerings were permitted under Section 5. Although the SEC notes that the Defendants have ceased their penny stock offering operations, the SEC argues that a permanent injunction is necessary to ensure that the Defendants do not engage in lucrative, but illegal, penny stock offerings in the future.

In response, the Defendants urge the court not to issue a permanent injunction. Specifically, the Defendants argue that they did not act with the requisite scienter. The Defendants contend that

the "violations found by the Court resulted from Mr. Kahlon's good-faith interpretation of ambiguous SEC regulatory pronouncements, the advice of numerous attorneys, and the apparent go-ahead he [Defendant Kahlon] received from numerous SEC enforcement attorneys who had closely scrutinized TJM's investment activities." DEFS. BRIEF IN OPP. TO PL. SEC'S MTN. FOR REMEDIES, pp. 32-33. The Defendants further argue that once Defendant Kahlon learned that a third group of SEC attorneys concluded that the Defendants' transactions were not exempt from the Securities Act registration requirements, the Defendants ceased trading – at a significant loss of approximately $2 million.

The court is not persuaded by the Defendants' arguments. The Defendants rely heavily on the notion that because the SEC's enforcement attorneys failed to advise the Defendants that their transactions were not exempt from the Securities Act registration requirements, the Defendants were permitted to engage in such activity. As such, the Defendants contend that they lacked the requisite scienter or knowledge of wrongdoing that is a factor to be considered by the court in determining whether to impose a permanent injunction. The court, however, previously rejected a similar argument urged by the Defendants in its prior decision concerning liability.

> Defendant contends that the fact that the SEC had interviewed and requested documents from Kahlon in connection with two other investigations but did not bring this enforcement action until much later somehow means that the SEC "explicitly permit[ted]" his conduct. Defendant has put forth no evidence showing the SEC had previously interpreted the exemption on which he relies in a manner that is contrary to the interpretation which it asserts here. "As stated by one court, 'neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense to a charge of violating Section 5 of the Securities Act.'"

*Kahlon*, 141 F. Supp. 3d at 681. Having reviewed the Defendants' arguments on the issue of remedies, the court is not inclined to alter its prior ruling. Therefore, in light of the fact that the

Defendants sold unregistered securities, either intentionally or with reckless disregard for the registration requirements, at a volume that netted over $100,000 a month at their peak, the court finds that the Defendants should be permanently enjoined from violating Section 5 of the Securities Act. *See Offill*, 2012 WL 1138622, *5.

### B. Disgorgement

> "'Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs.'" *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 413 (5th Cir. 2007) (quoting *SEC v. Huffman*, 996 F.2d 800, 802 (5th Cir. 1993)). "The district court has broad discretion in fashioning the equitable remedy of a disgorgement order." *Huffman*, 996 F.2d at 803. "Because disgorgement is meant to be remedial and not punitive, it is limited to property causally related to the wrongdoing at issue." *Allstate Ins.*, 501 F.3d at 413 (internal quotation marks omitted). "Accordingly, the party seeking disgorgement must distinguish between that which has been legally and illegally obtained." *Id*. "The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978). "In actions brought by the SEC involving a securities violation, 'disgorgement need only be a reasonable approximation of profits causally connected to the violation.'" *Allstate Ins.*, 501 F.3d at 413 (quoting *SEC v. First City Fin. Corp.*, 890 F.3d 1215, 1231 (D.C. Cir. 1989)). Once the SEC meets its burden of showing that "its disgorgement figure reasonably approximates the amount of unjust enrichment," the burden shifts to the defendant to "demonstrate that the disgorgement figure was not a reasonable approximation." *First City Fin.*, 890 F.2d at 1232. "'Where two or more individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws, they may be held jointly and severally liable for the disgorgement of illegally obtained proceeds.'" *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1117 (9th Cir. 2006) (brackets omitted) (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *see also SEC v. Hughes Capital Corp.*, 124 F.3d 449, 455 (3d Cir. 1997); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1475-76 (2d Cir. 1996).

*Offill*, 2012 WL 1138622, at *1.

Here, the SEC calculated that the Defendants profited $7,758,178 from the offerings this court found to be illegal. The Defendants do not dispute the SEC's calculations. Rather, the Defendants ask the court to deny the SEC's disgorgement request outright or to deem the

Defendants' disgorgement obligations satisfied by the Defendants' $2 million loss (approximate) when they ceased trading.

Again, the court is not persuaded by the Defendants' arguments. The fact that the Defendants might have lost $2 million when they stopped trading illegally does not entitle them to a satisfaction of their disgorgement obligations, nor does it entitle them to a $2 million dollar setoff. Additionally, the Defendants request that if the court should order the Defendants to disgorge their ill-gotten gains, then the amount should be offset by the taxes and expenses Defendant TJM incurred in its Rule 504 investments. However, "'the overwhelming weight of authority hold[s] that securities law violators may not offset their disgorgement liability with business expenses'". *SEC v. United Energy Partners, Inc.*, 88 F. App'x 744, 746-47 (5th Cir. 2004) (quoting *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 16 (D. D.C. 1998) (citing *SEC v. Hughes Capital Corp.*, 917 F. Supp. 1080, 1086 (D. N.J. 1996), *aff'd* 124 F.3d 449 (3d Cir. 1997)). Accordingly, the Defendants shall disgorge the amount of $7,758,178. The SEC requests that the Defendants be held jointly and severally liable for the disgorgement award. Since the Defendants did not contest the SEC's request for a finding that the Defendants be held jointly and severally liable, the Defendants shall be jointly and severally liable for the $7,758,178 disgorgement award. *See United Energy Partners, Inc.*, 88 F. App'x at 747 ("[J]oint and several liability is appropriate in securities cases where, as here, individuals collaborate or have close relationships in engaging in illegal conduct." (citations omitted).

### C. Prejudgment Interest

The SEC seeks prejudgment interest on the disgorgement award in the amount of $1,522,895. "Courts have recognized that an assessment of prejudgment interest, like the disgorgement remedy,

is intended to deprive wrongdoers of profits they illegally obtained by violating the securities laws." *Offill*, 2012 WL 1138622, at *2 (quoting *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003) (internal quotations and citations omitted)).

The court notes that the Defendants did not dispute the SEC's calculations concerning prejudgment interest. The Defendants only argue that the court should deny the SEC's request for prejudgment interest for the same reasons that the court should deny the SEC's request for an order of disgorgement. Since the court rejected the Defendants' arguments concerning disgorgement, the court likewise rejects the Defendants' arguments concerning an award of prejudgment interest. The Defendants are jointly and severally liable for prejudgment interest on the Defendants' disgorgement in the amount of $1,522,895.

### D.     Civil Penalty

The SEC requests that the court assess a first tier civil penalty against Defendant Kahlon pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d). "'Civil penalties are designed to punish the individual violator and deter future violations of the securities laws.'" *Offill*, 2012 WL 1138622, at *3 (quoting *SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 331 (S.D.N.Y. 2007)). "'Without civil penalties, the only financial risk to violators is the forfeiture of their ill-gotten gains.'" *Id.* (quoting *SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007)). "The Securities Act provides three tiers of penalties." *Id.*; *see* 15 U.S.C. § 77t(d); 17 C.F.R. § 201.1003 (2007).

> Neither § 20(d) of the Securities Act nor § 21(d) of the Exchange Act provides any guidance as to the proper amount of the civil penalty. A number of courts, however, have relied on the same principles when determining whether to award civil penalties. These factors are:
>
> > (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4)

> whether the defendant's conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.
>
> *Opulentica*, 479 F. Supp. 2d at 331 (citing *SEC v. Coates*, 137 F. Supp. 2d 413, 428-29 (S.D.N.Y. 2001) (listing factors)); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 386 (S.D.N.Y. 2007) (relying on these five factors); *SEC v. Lybrand*, 281 F. Supp. 2d 726, 730 (S.D.N.Y. 2003), *aff'd sub nom. SEC v. Kern*, 425 F.3d 143 (2d Cir. 2005). Other courts have considered such additional factors as the cooperation of the defendant with law enforcement authorities and the adequacy of other criminal or civil sanctions to punish the defendant. *See SEC v. Lewis*, 492 F. Supp. 2d 1173, 1174 (D. S.D. 2007); *SEC v. Church Extension of the Church of God, Inc.*, 429 F. Supp. 2d 1045, 1050-51 (S.D. Ind. 2005). "While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a discretionary nature and each case has its own particular facts and circumstances which determine the appropriate penalty to be imposed." *Opulentica*, 479 F. Supp. 2d at 331 (internal quotation marks omitted).

*Offill*, 2012 WL 1138622, at *3.

"The Court is authorized to impose a first-tier penalty after a showing of a violation of the Securities Act, and such a penalty does not require any additional finding by the Court." *SEC v. Reynolds*, No. 3:08-CV-0438-B, 2013 WL 3479825, at *4 (N.D. Tex. July 11, 2013)(citing 15 U.S.C. §77t(d)(2)(A) (2012)). "The amount of the penalty shall be determined by the court in light of the facts and circumstances. For each violation, the amount of the penalty shall not exceed the greater of (i) $[8,908] for a natural person . . ., or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 77t(d)(2)(A), 17 C.F.R. Pt. 201, Subpt. E, Tbl. I.

Here, the SEC seeks a first tier penalty against Defendant Kahlon in the amount of $200,000. As noted by the SEC, the penalty sought is far less than the maximum permitted – $7,758,178 in ill-gotten gains. The SEC requests a penalty that approximates $18,000 for each of the 11 issuers from which the Defendants purchased stock for their illegal offerings.

Defendant Kahlon argues that after the court reviews the relevant factors, a penalty, if any, should be assessed at the low end of the first tier. Defendant Kahlon contends that (1) there is no evidence of substantial investor losses or the risk of substantial investor losses, (2) his conduct was not egregious, and (3) although he has not admitted any wrongdoing, he should not be penalized for doing what he considered to be lawful activity. Accordingly, Defendant Kahlon requests a penalty in the amount of $5,000 for each of the 11 issuers from which the Defendants purchased stock for their illegal offerings.

Again, Defendant Kahlon relies heavily on the notion that because the SEC's enforcement attorneys failed to advise the Defendants that their transactions were not exempt from the Securities Act registration requirements, the Defendants were permitted to engage in such activity. As noted above, the court has already rejected this argument. Having considered the appropriate factors, the court finds that the SEC's request for a first tier penalty against Defendant Kahlon in the amount of $200,000 is appropriate. In calculating the penalty, the court finds that the Defendants' "violations involved multiple transactions in which . . . unregistered shares were sold resulting in millions of dollars of profits to them." *Offill*, 2012 WL 1138622, at *4.

### E. Permanent Penny Stock Bar

Finally, the SEC seeks a permanent penny stock bar against the Defendants.

> Section 20(g) of the Securities Act authorizes the court to "prohibit [a] person from participating in an offering of penny stock, conditionally or unconditionally, and permanently or for such period of time as the court shall determine" if that person is "participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock." 15 U.S.C. § 77t(g)(1). Courts often consider the following factors when determining the appropriateness of a penny stock bar: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *SEC v. Elliot*, 2011

WL 3586454, at *14 (S.D.N.Y. Aug.11, 2011) (citations omitted).
*Offill*, 2012 WL 1138622, at *5.

The SEC seeks a permanent penny stock bar against both of the Defendants for essentially the same reasons that it sought a permanent injunction. In response, the Defendants argue that while they do not object to a limited order prohibiting them from engaging in any Rule 504 transactions, they do object to a broad penny stock bar, permanent or temporary. The Defendants contend that Defendant Kahlon's violations were not egregious, Defendant Kahlon is not a repeat offender, and there is no evidence of scienter.

The court finds that a penny stock bar is warranted "for essentially the same reasons that support entry of an injunction[.]" *Offill*, 2012 WL 1138622, at *5. Since the Defendants sold unregistered securities, either intentionally or with reckless disregard for the registration requirements, at a volume that netted over $100,000 a month at their peak, the court finds that the entry of a permanent penny stock bar is warranted because the Defendants "could easily repeat this conduct." *Id*.

"Under § 20(g) of the Securities Act, the court can craft a prohibition that is conditional or unconditional, and permanent or temporary." *Id*. The court hereby imposes an unconditional permanent penny stock bar commencing on the date the judgment is filed in this case.

## CONCLUSION

Based on the foregoing, the court hereby **GRANTS** Plaintiff Securities and Exchange Commission's motion for remedies (docket entry #63).

**SIGNED this the 30th day of September, 2016.**

-11-

*Richard A. Schell*
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE